1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,        :        09cr377

                v.               :        U.S. Courthouse
                                          Brooklyn, New York
EDWARD STEIN,                    :
                                          June 22, 2009
                    Defendant.   :        3:45 p.m.

- - - - - - - - - - - - - - - X

                    TRANSCRIPT OF PLEA
            BEFORE THE HONORABLE JAMES ORENSTEIN
            UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Government:      BENTON J. CAMPBELL
                        United States Attorney
                        By:  SCOTT KLUGMAN
                             CLAIRE KEDESHIAN
                             WINSTON PAES
                        Assistant U.S. Attorneys
                        271 Cadman Plaza East
                        Brooklyn, New York 11201

For the Defendant:      BRIAN MAAS, ESQ.



Court Reporter:         Burton H. Sulzer
                        225 Cadman Plaza East
                        Brooklyn, New York 11201
                        (718) 613-2481
                        Fax # (718) 613-2505



Proceedings recorded by mechanical stenography, transcript
produced by CAT.

2

1          (Open court-case called-appearances noted.)

2          THE COURT:  Good afternoon.  You're Mr. Stein?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Folks in the gallery, thank you all for

5     your patience.  I understand you have been here for some time

6     and that you had already begun proceedings.

7          Mr. Mass, Mr. Klugman, let me look to you to get me

8     caught up in terms of what has already happened this afternoon

9     and what has not.

10         MR. KLUGMAN:  Judge Weinstein took some statements

11    from some of the individuals who have rights under the Victims

12    Rights Act.  We have not done the waiver of information.  He's

13    not read the defendant --

14         THE COURT:  None of the plea proceedings?

15         MR. KLUGMAN:  Yes.  And the judge indicated that the

16    individuals should be given the opportunity to speak on bond

17    again if they so chose.

18         MR. MAAS:  We did have some discussion with Judge

19    Weinstein about terms of a bond should Mr. Stein be released,

20    including what types of travel restrictions would be put on,

21    the fact that there will be two more houses added to the

22    existing bond and other conditions.

23         Those were discussed and then Judge Weinstein

24    indicated that obviously it would be your Honor's decision, in

25    the first instance.

1            THE COURT:  So folks who are sitting in the gallery

2    and who have been waiting patiently to speak, let me just say

3    a couple of things and then those who wish to speak will

4    certainly have an opportunity.

5            First, I'm here to conduct a plea proceeding.  I am

6    not going to make the decision about whether a guilty plea

7    will or will not be accepted.  However, if somebody wishes to

8    plead guilty, there are certain things that some judge must

9    explain to the defendant and some questions that must be asked

10   and that the defendant must answer.  That is my function here

11   today with respect to a plea.

12           But we are making a transcript of the proceeding and

13   Judge Weinstein, whose case this is, will make a decision

14   later about whether the plea should be accepted.

15           So I say that because those of you who are thinking

16   about whether to speak today, I will be happy to hear you and

17   whatever you say will be part of the record that Judge

18   Weinstein will see.  On the other hand, if you wish to think

19   about it some more, you will have another opportunity, you can

20   write a letter to the court after today's proceeding to

21   express views about whether a plea should be accepted.

22           The other thing I'll be doing here today is setting

23   bond, and that's something about which those of you who

24   consider yourselves victims will have an opportunity to be

25   heard as well.

4

1          In the interest of doing things efficiently, I will

2     hear from anyone on either of those subjects now.  Please, in

3     consideration, there are a number of you here, to make sure

4     that everybody who wants to speak has an opportunity to speak,

5     please try to be brief.

6          I don't mean to cut you off if there is something

7     you think I should hear and consider today, but please do try

8     and be brief in consideration of your fellow citizens here who

9     wish to be heard, but also one thing that is very important,

10    nothing that's going to happen here today will have any

11    bearing on a sentence.  So if what you have in mind to say is

12    something that relates to sentencing, I would suggest

13    respectfully that you consider saying that at a later

14    occasion.

15         If a plea is accepted, or if it's not and the case

16    goes to trial and the defendant is convicted, if those things

17    happen, then there will be a further opportunity to speak

18    about sentencing, but it's simply not a decision that is going

19    to be made today.

20         All right.  I understand that some of you have

21    spoken to Mr. Klugman about wishing to be heard and I have

22    some names here, including one victim who wishes not to have

23    her name mentioned in court.

24         Is that person here?

25         A VOICE:  I'm going to speak -- sorry.

5

1          THE COURT:  Come up, please.

2          A VOICE:  I had discussed this with Judge Weinstein

3   previously.  On page 8 of the complaint it says that Mr. Stein

4   stole a million dollars from a single client to buy his

5   condominium, and I'm that client.

6          I have a problem with the fact that Mr. Stein is

7   being released to go live in an apartment that he bought with

8   stolen funds.  A lot of people have gotten up today and talked

9   about how they lost their homes and lost their businesses and

10  they have lost their lives because of Mr. Stein and I don't

11  understand why he is allowed to go and live in this luxurious

12  Upper East Side apartment on money that he stole from all of

13  us and from me specifically in this instance.

14         I've known Mr. Stein for seven years personally, we

15  traveled with him extensively.  The money that he stole for

16  the apartment was stolen from me six weeks after the death of

17  my mother and three months after the death of my father when

18  he began what became a year long vigil to take as much money

19  from me as possible on several different occasions.

20         Also, as far as the flight risk, he travels

21  extensively.  We have been with him in several countries.  He

22  travels to Dubai quite often.  He told my husband and me that

23  he had an office in Dubai -- of course he said a lot of things

24  that weren't true -- and he also said to us something that he

25  denied previously, that he had, because of his extensive

6

1    Middle East travel, that he had two passports.  Now he says

2    that isn't true but that's what he told us.

3           I don't understand why he is being given this

4    leniency to go live his life like he's lived it when we're all

5    paying for it.

6           THE COURT:  Thank you, ma'am.

7           A VOICE: Thank you.

8           THE COURT:  The next person have listed here -- is

9    there anybody else who spoke to Mr. Klugman about speaking who

10   does wish to remain anonymous?

11          A VOICE:  I didn't put my name down but I'd like to

12   speak.

13          THE COURT:  Let me get through the names that I have

14   here and then I will give anyone else an opportunity.

15          I can't quite make it out, is it Barry Cligman?

16          A VOICE:  Barry Clateman.

17          THE COURT:  Come up, please.

18          Go ahead, sir.

19          MR. CLATEMAN:  I just don't understand how somebody

20   who did what this man did and destroyed all these people,

21   including my wife and I, who doesn't sleep most nights, and

22   visited my home regularly every month, two months to go over

23   all my assets and where he invested them and it's just

24   incredible what he's done and -- I don't know if there are

25   ways of getting out of the country without a passport or

7

1   whether he has two passports or three or one or if they were

2   confiscated, which I would hope they were, but it's a

3   little -- it's a little unnerving to think that he's going to

4   be living in that fancy apartment in Manhattan with -- that

5   woman that spoke previously -- with the money that he used to

6   buy it from her and everybody else's.

7        We're all victims here that have lot our money, our

8   life savings, and my employees from my business have no

9   pension, they're probably going to sue me, and we have

10  nothing.

11       I don't want to take up any more time.  I think you

12  got the message.

13       THE COURT:  I did.  Thank you, sir.

14       The next person I have on my list is Shelly

15  Anderson.

16       MS. ANDERSON:  My husband will speak.

17       THE COURT:  Very good.

18       Mr. Mass, I take it there is no objection on that?

19       MR. MAAS:  No objection.

20       A VOICE:  My name is Glenn Wurtzel.  I'm speaking on

21  my own behalf and my wife Shelly.  There was a

22  misunderstanding before whether she thought she was going to

23  be anonymous.

24       Mr. Stein -- my wife came to Mr. Stein at a time in

25  her life when she was most vulnerable and had just suffered a

8

1  number of personal and financial blunders, and Mr. Stein knew

2  it and she said to him, You have to be careful with my money.

3  I need this security.  And she looked to him to take care of

4  her.  He knew that and took everything and looked for ways to

5  find more.

6  People that have spoken that I've heard, I've heard

7  similar stories where Mr. Stein has come to them with a

8  smiling face and looked in their eyes and took their money

9  that he said I would take precious care of.

10  He hurt his own family.  His son, as I know, is a

11  financial consultant -- he hurt his son's business, if not

12  destroyed it.

13  I'm speaking on bond here.  My understanding is that

14  members of his family have put up their homes on his behalf.

15  It seems to me, according to what I know of his pattern and

16  the evidence that he's already presented, that he has again

17  and again looked clear straight in the face of people he said

18  he's going to protect, including his son, and betrayed them.

19  It seems to me much more consistent with his

20  character to betray any bond or any trust that people have put

21  up for him and I do not see why he's allowed to be out on

22  bond.

23  THE COURT:  Thank you, sir.

24  Next I have Ms. Bennett.  Come up, ma'am.

25  MS. BENNETT:  Leslie Bennett.

9

1          THE COURT:  Good afternoon.

2          MS. BENNETT: I know this is repetitive because I

3    absolutely am going to agree with what everybody had said.

4          Mr. Stein has just caused untold emotional distress

5    on so many people, financial ruin on so many people, have

6    caused us sleepless nights.  There are those of us struggling

7    to pay mortgages, college tuition.  We've saved -- in my case,

8    I had some money that my parents had left me earmarked for my

9    children's education, for retirement purposes, and those of us

10   that are struggling, it's hard to comprehend that he will walk

11   free and he will live for whatever period of time in luxury

12   and he will be able to do things that we no longer can do.

13         You know, as a victim, I have to say I understand

14   bail when somebody is yet to be found guilty.  He's here today

15   to make a plea that he is guilty and admit to doing these

16   things, so to me it seems that if you're guilty you go to

17   jail.

18         THE COURT:  All right.  Thank you, ma'am.

19         Is that everyone that I had listed?  If anyone who

20   else wishes to speak, feel free to come up.

21         A VOICE: Yes.  I'd like to be anonymous, your

22   Honor..

23         THE COURT:  All right.

24         Is there any objection?

25         MR. MAAS:  No objection.

1      THE COURT:  All right.  Go ahead.

2      A VOICE:  Your Honor, I don't want to repeat what

3  everybody has already said, but I think it's -- I'd like to

4  inform the court that I feel very strongly on the fact that

5  Mr. Stein planned what he did, he executed it very well and I

6  think he has the wherewithal to make way from this court.

7      I think the fact that he put up his children's

8  homes -- if they're not part of this, which I don't know,

9  certainly, if you don't protect us from him, your Honor,

10 protect his family from him cause he'll do them in like he did

11 us.  Thank you.

12     THE COURT:  Thank you, sir.

13     Yes.  Anyone else?

14     Come up, please.

15     A VOICE:   My name is Saraletty Memoli.

16     I'm the mother of Rod Kotler, and my daughter-in-law

17 Gwen Kotler spoke earlier.  My son lost his father when he was

18 9-years-old.  My husband worked very, very hard for his money

19 and put monies aside for my children, both my son and my

20 daughter.  My son put it into Ed Stein's hands.

21     When my son needed a chunk of money from his money,

22 Ed Stein convinced him to take out two lines of credit against

23 his house -- on his house.  My children now are moving out of

24 their house because they can no longer afford the payments and

25 they are moving into my one-bedroom apartment.

1            So it's not just the victims of Ed Stein, but it's

2     the surrounding families that are also going to suffer and

3     have great hardship, because it is a very great hardship on me

4     financially and being in such a small environment, it will be

5     very, very difficult for all of us.

6            And my grandchildren have been uprooted, my grandson

7     was hysterical when he was told that he could no longer go to

8     the school, this is his last year in that school, and it's the

9     children, the grandchildren that are suffering as well as the

10    parents and the extended family.

11            THE COURT:  Thank you.

12            MS. KOTLER: I just wanted to say that a person who

13    has no conscience, that could do this to so many people can

14    certainly abscond and not care about what happens to his own

15    children as well.  I firmly believe that.

16            THE COURT:  Thank you.

17            Is there anybody else who wishes to be heard?

18            All right.  Mr. Klugman, we've heard from several

19    people today.  Is there anybody else that has not received

20    notice that you're aware of who would qualify as a victim

21    under the Crime Victims Rights?

22            MR. KLUGMAN:  No, your Honor.  We believe we have

23    made all the notice that we can, contacting everybody that we

24    were aware of.

25            THE COURT:  Those of you who have spoken and those

1  of you who are in attendance and haven't, I want to give you a

2  preview of what is coming up.

3           I'm going to conduct the plea proceeding now.  I

4  won't make any decision with respect to bail until we have

5  seen the results of the plea proceeding.  So sit tight and

6  please be patient for that.

7           I will say though that the decision that I have to

8  make at this stage will not, as frustrating as this may be for

9  you, will not take into account the proposition, even if he

10  admits guilt, that he is legally guilty at a point where he

11  is, in essence, has been found guilty, because it's not within

12  my authority to actually find him guilty, that is something

13  that Judge Weinstein can do as a district judge.  I can merely

14  make a recommendation, and so the decision I will have to make

15  with respect to bail will be one that would be the same as if

16  he were appearing for the first time and pleading not guilty.

17           Which is, I have to find the combination of

18  conditions, the least restrictive combination of conditions

19  that will assure that he will return to court and not endanger

20  the community.  That is the standard that I have to apply and

21  that is the standard that I will apply.

22           I will take into account the things that I've heard

23  today, and I will have some questions for both sides about

24  multiple passports and whether there are funds available that

25  are not accounted for.  I will certainly ask questions about

13

1  that.  I wanted you folks to understand the standard that the

2  law requires me to apply.

3       All right.  Let's turn to the plea proceeding

4  itself.

5       Mr. Mass, is it your client's wish to enter a plea

6  to an information that is to be filed?

7       MR. MAAS:  It is, your Honor.

8       THE COURT:  And also to waive indictment?

9       MR. MAAS:  He signed the waiver of indictment form

10  and is prepared to move forward with the plea proceeding on

11  the information.

12       THE COURT:  All right.  Mr. Stein, if it's your

13  intention to waive indictment and plead guilty today, I'm

14  going to explain certain things to you and I must ask you

15  certain questions.  I'll ask you to rise, please, to be sworn

16  in.

17       (Defendant sworn.)

18       THE COURT:  Have a seat.

19       Now that you have sworn to tell the truth, you must

20  tell the truth and if you were to deliberately lie in response

21  to any question that I ask you,  you could face further

22  criminal charges for perjury.

23       Do you understand that?

24       THE DEFENDANT:  Yes.

25       THE COURT:  So if I say something that you don't

14

1   understand -- it's important that you understand my questions.

2   If I say something that you don't understand, if you need me

3   to repeat or explain just let me know.  Will you do that?

4           THE DEFENDANT:  Yes, I will.

5           THE COURT:  And if you need any time to confer with

6   your attorney, let me know and I'll give you as much time as

7   you need.

8           Will you do that please?

9           THE DEFENDANT:  Yes, I will.

10          THE COURT:  Now, your attorney mentioned some

11  documents.  I have a form called Waiver of Indictment and a

12  form called Order of Referral, and then I have another

13  document entitled Plea Agreement.

14          Did you sign each of those documents today?

15          THE DEFENDANT:  Yes, I did.

16          THE COURT:  All right.  I'm going to ask you some

17  questions to be sure that you are competent to proceed.  Some

18  of them are personal questions and I don't mean to pry, but I

19  must be sure that you are able to proceed today.

20          Tell me please how old are you?

21          THE DEFENDANT:  Fifty-nine.

22          THE COURT:  How far have you gone in school?

23          THE DEFENDANT:  I graduated college.

24          THE COURT:  Are you now or have you recently been

25  under the care of a doctor or a psychiatrist for any reason?

1        THE DEFENDANT:  Yes.

2        THE COURT:  You don't have to keep leaning in.  The

3   microphone willing pick you up.

4        Tell me what kind of care you have been receiving.

5        THE DEFENDANT:  I have seen a psychiatrist for

6   anxiety.

7        THE COURT:  Do you receive any medication for the

8   psychiatrist condition?

9        THE DEFENDANT:  Yes, I do.

10       THE COURT:  Tell me what medication you're taking.

11       THE DEFENDANT:   Klonopin.

12       THE COURT:  When did you most recently take it?

13       THE DEFENDANT: About a week ago.

14       THE COURT:  When you take the medicine, does it

15   affect your ability to concentrate or your memory?

16       THE DEFENDANT:  No, it does not.

17       THE COURT:  Are you taking any other medicines,

18   prescriptions or otherwise?

19       THE DEFENDANT:   No, I am not.

20       THE COURT:  And in the past 24 hours have you taken

21   any kind of pill or drug or medicine or alcoholic beverage?

22       THE DEFENDANT:  No, I have not.

23       THE COURT:  Have you ever been hospitalized or

24   treated in any way for addiction or any kind of substance

25   abuse problem?

1          THE DEFENDANT:  No, I have not.

2          THE COURT:  Is your mind clear right now?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Have you had any difficulty

5    understanding my questions so far?

6          THE DEFENDANT:  No, I have not.

7          THE COURT:  And, Mr. Mass, have you discussed the

8    matter of a guilty plea with your client?

9          MR. MAAS:  Extensively, your Honor.

10         THE COURT:  In your view, does he understand the

11   rights he would waive by pleading guilty?

12         MR. MAAS:  He does, in my view he does.

13         THE COURT:  Do you have any reason to question his

14   competency to proceed today?

15         MR. MAAS:  I don't have any reason to.

16         THE COURT:  Mr. Stein, I'm what's known as a

17   magistrate judge and, as I'm sure you know, the case is

18   assigned to Judge Weinstein, who is a district judge.

19         You have the right to have this proceeding proceed

20   before Judge Weinstein, and one reason that you might want to

21   do that is, as we discussed already, he's the one who, if you

22   are convicted, will impose a sentence, not me.

23         It's perfectly fine if you wish to proceed before

24   Judge Weinstein, you won't do it today obviously, but we'll

25   find the time when he's available.  On the other hand, if you

1  understand that you do have the right to proceed before a

2  district judge and you are willing to waive that right, we'll

3  proceed with me.  But there is no harm to you if you would

4  rather not do it that way.

5           Do you understand that?

6           THE DEFENDANT: Yes, I do.

7           THE COURT:  Is it your intention to waive your right

8  to have the district judge hear your plea and to proceed

9  before me today?

10          THE DEFENDANT: Yes.  I wish to waive my right.

11          THE COURT:  Is that what you intended when you

12  signed this order of referral?

13          THE DEFENDANT: Yes, it is.

14          THE COURT:  I should have asked with respect to that

15  document and the other two that you signed, did you read and

16  understand each of those documents before you signed them?

17          THE DEFENDANT: Yes, I did.

18          THE COURT:  Now, have you received a copy of the

19  information that the government wishes to file against you?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  And do you understand the nature of the

22  charges in them?

23          THE DEFENDANT: Yes, I do.

24          THE COURT:  Now, what you should understand is that

25  this information alleges that you committed five crimes, four

1  of them described as securities fraud and one of them
2  described as wire fraud.
3          Each of those crimes is what's called a felony,
4  which means you can be punished for at least one year --
5  sorry, for more than one year, rather.
6          Do you understand that?
7          THE DEFENDANT: Yes.
8          THE COURT:  You should understand that because these
9  are felonies, you have the right not to be prosecuted for such
10 crimes unless a grand jury finds probable cause to believe
11 that you committed them and returns those charges in what is
12 called an indictment.
13         Now, an information, which what is we have here, is
14 simply an accusation that is written down by the prosecutor
15 and the prosecutor doesn't have to go to a grand jury and show
16 probable cause to write down that accusation in an
17 information.
18         A grand jury is a group of from 16 to 23 citizens,
19 and before they can vote to indict you, at least 12 of them
20 have to agree that there's probable cause to believe that you
21 committed the charged crime.  So if you don't waive your right
22 to have a grand jury consider your case, a prosecutor couldn't
23 simply proceed by using an information.  He would instead have
24 to go to the grand jury, and he might or might not decide to
25 do that.

1        If he went to the grand jury, the grand jury might

2   or might not vote to indict you.  Now, if you waive your right

3   to have the grand jury consider your case, we'll proceed as if

4   you had been indicted.  We will proceed on the basis of the

5   information written by the prosecutor.

6        Have you discussed waiving your right to a grand

7   jury with your attorney?

8        THE DEFENDANT: Yes, I have.

9        THE COURT:  And do you understand your right to have

10  a grand jury consider your case?

11       THE DEFENDANT: Yes, I do.

12       THE COURT:  Now, we have a plea agreement that you

13  identified before.  Other than the promises that are written

14  down in that agreement, has anyone made any threat or promise

15  to try to get you to give up your right to have the grand jury

16  consider your case?

17       THE DEFENDANT:  No, your Honor.

18       THE COURT:  Do you wish to give up your right to

19  have the grand jury consider your case?

20       THE DEFENDANT:  Yes, I do.

21       THE COURT:  And, Mr. Mass, is there any reason why

22  your client should not waive indictment?

23       MR. MAAS:  There is no reason.

24       THE COURT:  All right.  I will sign the waiver.

25       Mr. Stein, let's talk about the charges that are in

1    the information that I've now permitted the government to

2    file.

3           As I said, there are four charges of securities

4    fraud and one charge of wire fraud and I want to explain to

5    you what the government would have to prove to convict you of

6    each of those crimes.  Let's talk first about the securities

7    fraud charges.

8           In each case, to convict you of securities fraud,

9    the government would have to prove several things, and let me

10   just start off by saying that in each of them -- and I am not

11   as familiar as the rest of you probably are with the specifics

12   here -- in each count of securities fraud there's a different

13   time frame that is alleged, that the government would have to

14   prove that the time frame written in the information is when

15   the events at issue happened.

16          Do you understand that?

17          THE DEFENDANT: Yes, I do.

18          THE COURT:  They'd have to prove that you did

19   something to further the charged crime within the Eastern

20   District of New York, which includes Brooklyn, Queens, Staten

21   Island and Long Island -- do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Now, in terms of the actual substance of

24   the charge, the government would have to prove that you used

25   manipulative devices, contrivances, made statements about

1  facts that were important to people's decisions, to create a

2  device or scheme to defraud people, to obtain their money by

3  means of a misstatement or a misrepresentation of fact.

4         They would have to prove that the facts about which

5  you made the misstatements were material, they were important

6  to the decision that somebody had to make, and that you

7  engaged in acts that were designed to and that did operate as

8  a fraud or as a deceit upon investors or potential investors

9  in different companies, the different companies are set forth

10  in each charge, and that in doing this, they would have to

11  prove that you used the means or instrumentality, something to

12  do with interstate and foreign commerce and the mailings.

13         Do you understand that?

14         THE DEFENDANT: Yes, I do.

15         THE COURT:  Mr. Klugman, have I omitted any of the

16  material elements of the security fraud counts?

17         MR. KLUGMAN:  Just in connection with the purchase

18  or sale of the securities -- and I just want to make clear,

19  there is no reliance element.

20         THE COURT:  I don't think I said that.

21         Just so it's clear, the government would not have to

22  prove that anyone actually did rely on a misstatement, but

23  that the scheme was to get people to rely on a misstatement so

24  you would obtain money or property.

25         Do you understand that?

1      THE DEFENDANT: Yes, I do.

2      THE COURT:  Anything else with respect to the

3  securities fraud?

4      MR. KLUGMAN:  That's it.

5      THE COURT:  That's with respect to the first four

6  charges.  The fifth charge is called wire fraud.  It's

7  similar, has the same kind of requirements about proving the

8  time that is charged in the indictment and the place, that

9  something in furtherance of this scheme happened within the

10  Eastern District of New York.

11      And it's also a fraud crime  so the government would

12  have to prove that you devised a scheme to defraud -- in this

13  case it refers to a specific investor -- to obtain money or

14  property from that investor, to do it by means of a false or

15  fraudulent statement or pretext, and they would have to prove

16  that for the purpose of executing that scheme, that you

17  transmitted or that you caused to be transmitted some

18  communication in interstate or foreign commerce by means of

19  wire, and that could be a telephone, an e-mail, a fax, that

20  sort of thing.

21      Do you understand that?

22      THE DEFENDANT: Yes, I do.

23      THE COURT:  All right.

24      With respect to all of these crimes, the government

25  would have to prove that you acted knowingly and

23

1    intentionally, you knew what you were doing.

2              Do you understand that?

3              THE DEFENDANT: Yes, I do.

4              THE COURT:  And Mr. Klugman, have I omitted any of

5    the essential elements of the wire fraud?

6              MR. KLUGMAN:  In terms of the mens rea, also with

7    the intent to defraud.

8              THE COURT:  Of course.  That wasn't clear.

9              In each case, with respect to each of these crimes,

10   the government would have to prove that your intention was to

11   defraud people; to obtain money or property by means of

12   misrepresentation.

13             Do you understand that?

14             THE DEFENDANT: Yes.

15             THE COURT:  All right.

16             Anything further with respect to the essential

17   elements?

18             MR. KLUGMAN:  No.  Nothing further.

19             THE COURT:  So those are the things that the

20   government would have to prove to convict you of these crimes,

21   and you have a right to plead not guilty and make them prove

22   that.

23             Do you understand?

24             THE DEFENDANT: Yes, I do.

25             THE COURT:  If you plead not guilty, under our

24

1   Constitution you would have the right to a speedy and public

2   trial by a jury with the assistance of your attorney on those

3   charges.

4                Do you understand that?

5                THE DEFENDANT: Yes, I do.

6                THE COURT:  And if you could not afford to retain an

7   attorney for the trial, the court would appoint an attorney to

8   represent you throughout every stage of the trial and, if you

9   were convicted, throughout an appeal.

10                Do you understand that?

11                THE DEFENDANT: Yes, I do.

12                THE COURT:  Now, at a trial you would be presumed

13   innocent and the government would have to overcome that

14   presumption and prove you guilty beyond a reasonable doubt.

15                You would not have to prove that you are innocent.

16   If the government failed to prove you guilty beyond a

17   reasonable doubt, the jury would have a duty to find you not

18   guilty.

19                Do you understand that?

20                THE DEFENDANT:  Yes, I do.

21                THE COURT:  Also, at a trial, the government would

22   have to bring its witnesses to court so that they could

23   testify in your presence.  Your counsel would have the right

24   to cross-examine the witnesses.  He could object to any

25   evidence that the government tried to offer against you and he

1    could offer evidence in your behalf, if he thought that there

2    was evidence that would assist you.  He could also compel

3    witnesses whom you wished to call at trial to attend the

4    trial.

5            Do you understand all of that?

6            THE DEFENDANT: Yes, I do.

7            THE COURT:  At the trial you would also have the

8    right to testify in your own behalf, if you wished to do so;

9    however, you could not be forced to be a witness at your trial

10   because under our Constitution nobody can be forced to be a

11   witness against himself.  So if you decided to go to trial and

12   decided not to testify at the trial, the judge would instruct

13   the jury that they couldn't hold that fact against you.

14           Do you understand that?

15           THE DEFENDANT: Yes, I do.

16           THE COURT:  Now, if you plead guilty and if, based

17   on my recommendation, the court accepts your plea, you're

18   going to be giving up your right to a trial and these other

19   rights that I've discussed, there won't be a trial, you will

20   simply be found guilty on the basis of your plea and you won't

21   ever be able to challenge that determination of guilt, not by

22   appeal and not by some later legal proceeding, the question of

23   your guilt will be settled for all time.

24           Do you understand that?

25           THE DEFENDANT:  Yes, I do.

1          THE COURT:  You should also understand that if you

2    decide to plead guilty, I'm going to ask you some questions

3    about what did you that makes you think you are guilty of

4    these crimes so that I can be satisfied there's a factual

5    basis for your plea.

6          Now, if you decide to answer those questions and

7    tell me that you did something that makes you guilty, you're

8    going to be giving up your right not to be a witness against

9    yourself.

10          Do you understand that?

11          THE DEFENDANT: Yes, I do.

12          THE COURT:  And are you willing to give up your

13    right to a trial and these other rights that I've discussed

14    with you?

15          THE DEFENDANT: Yes, I am.

16          THE COURT:  Now, I have the original plea agreement

17    here with me.  Do you have a copy with you?

18          MR. MAAS:  We do, your Honor.

19          THE COURT:  All right.  Mr. Stein, have you read and

20    understood this entire agreement?

21          THE DEFENDANT:  Yes, I have.

22          THE COURT:  Now, is it your agreement with the

23    government?

24          THE DEFENDANT:  Yes, it is.

25          THE COURT:  I'm not going to go through it page by

1  page or paragraph by paragraph because I don't want to give

2  you the wrong impression that any one part of this agreement

3  is more or less important than any other part.  As far as I

4  can tell, it's the entire document that constitutes your

5  agreement with the government.

6          Is that your understanding as well?

7          THE DEFENDANT: Yes, it is.

8          THE COURT:  One thing I want to be sure about is, do

9  you think the government has promised you anything that I

10  can't find by reading this document?

11          THE DEFENDANT:  No, your Honor.

12          THE COURT:  And Mr. Mass, is that your understanding

13  as well?

14          MR. MAAS:  It is my understanding.  There are two

15  clarifications that I just want to put on the record that are

16  not in the document and by not being there I want to make sure

17  that there is no disagreement with the government.

18          One is that there's a guidelines -- government's

19  guidelines recommendation or estimate in the agreement.  We

20  have not consented to that and we retain the right under the

21  agreement to present to Judge Weinstein our own arguments

22  regarding the guidelines and the calculation of the

23  guidelines.

24          THE COURT:  I'll note for the record that the

25  agreement says "the Office estimates" --

1          MR. MAAS:  Correct.

2          THE COURT:  -- with respect to the guidelines

3    calculation.

4          MR. MAAS:  The second point that I want to make is

5    that there is nothing in the agreement that restricts our

6    ability to argue for a sentence beneath the guidelines and we

7    have retained the right to do that.

8          THE COURT:  Mr. Klugman, is that your understanding

9    as well.

10          MR. KLUGMAN:  Yes, that is my understanding.

11          As to the estimate, since it was raised now, I might

12    as well raise this now, it is just an estimate on the part of

13    the government as well.

14          Obviously, we need to sort out loss, which is a big

15    part of the guideline range in this case, and the estimate may

16    be too high or too low, we don't know for certain yet, but

17    that's my best guess at this point.

18          THE COURT:  I will discuss further with Mr. Stein

19    when we get to the issue of sentencing.

20          Leaving aside those two matters that Mr. Mass

21    raised, neither of them changes anything that's in the

22    agreement.  My understanding from looking at this document,

23    this is your entire agreement and there is nothing that the

24    government has promised that isn't written down here.

25          Is that your understanding, Mr. Stein?

29

1          THE DEFENDANT: It is.

2          THE COURT:  Given what we just discussed, that's

3   your understanding as well, Mr. Mass?

4          MR. MAAS:  It is.

5          THE COURT:  Mr. Klugman, is it your understanding?

6          MR. KLUGMAN:  Yes, your Honor.

7          THE COURT:  All right.  Let's talk about the

8   sentencing possibilities.

9          Now, we have got two types of crimes -- there are

10  five counts total, four of them, as I said, are called

11  securities fraud.  I'm going to tell you the sentencing

12  possibilities for that crime first and then I will turn to the

13  wire fraud.

14         What you must understand is that each of these five

15  counts carries a separate possible sentence and they could be

16  stacked up.  So, for example, just to start off, the maximum

17  prison term for the securities fraud charge is 20 years.

18         So, if the judge were to impose consecutive

19  sentences, which he could do, you could face on the securities

20  fraud charges a total of 80 years in prison.

21         Do you understand that?

22         THE DEFENDANT: Yes, I do.

23         THE COURT:  Then, of course, there's the wire fraud

24  charge which also carries a possible sentence of 20 years in

25  prison.  So the total sentence of imprisonment in this case

1    could be one hundred years.

2              Do you understand that?

3              THE DEFENDANT: Yes, I do.

4              THE COURT:  All right.  Now, there's no minimum term

5    of imprisonment on any of these charges.

6              Do you understand that?

7              THE DEFENDANT: Yes, I do.

8              THE COURT:  In addition to a prison term, the court,

9    on each of the securities fraud charges, could sentence you to

10   pay a fine of up to five million dollars.

11             Do you understand that?

12             THE DEFENDANT: Yes, I do.

13             THE COURT:  The court must also sentence you to pay

14   restitution to the victims of your crime for their losses, and

15   I can't tell you what the maximum amount of restitution may

16   be, we don't know that today.

17             If you need to know what the maximum restitution

18   amount would be before deciding whether to plead guilty, don't

19   plead guilty today because I can't tell you.

20             Do you understand that?

21             THE DEFENDANT: Yes, I do.

22             THE COURT:  In addition to -- I left out one

23   important part of it that I skipped over, supervised release.

24             If the court imposes a prison term, the court can

25   also sentence you on each of these securities fraud charges to

1    serve a term of up to three years of supervised release.  Now,

2    what that means is, upon your release from prison for the term

3    of supervised release up to three years, you would be under

4    supervision and you would have to obey certain conditions.

5         And, if, during that period of supervision, you

6    violated any of the conditions of your release, you could be

7    sentenced to serve up to two more years in prison without

8    credit for the time that you had already served in prison and

9    without credit for the time that you had already been under

10   supervision.

11        Do you understand that?

12        THE DEFENDANT: Yes, I do.

13        THE COURT:  Now, in addition to prison and the fine

14   and restitution, the court must also sentence you to pay

15   what's called a special assessment in the amount of $100 on

16   each of the charges.

17        Do you understand that?

18        THE DEFENDANT: Yes, I do.

19        THE COURT:  In addition, you could face additional

20   penalties not specifically part of the sentence, but I want to

21   make sure you understand that, there could be civil remedies,

22   including what is called disgorgement, any profit or gain that

23   you received from these crimes you would have to give up.

24        Other penalties, injunctive relief, be forced to

25   take certain actions as a result of a separate action by the

1    Securities and Exchange Commission, and the court could also

2    require you to forfeit property, as set forth in the plea

3    agreement.

4              Do you understand that?

5              THE DEFENDANT: Yes, I do.

6              THE COURT:  All right.

7              Now, I completed telling you about the possibility

8    penalties for the securities fraud charges.  There is also the

9    wire fraud charge.  As I said, that carries a possible prison

10   term of up to 20 years and that would be consecutive to

11   everything else.

12             Do you understand that?

13             THE DEFENDANT: Yes.

14             THE COURT:  As with the securities fraud charge, the

15   wire fraud charge also carries the possibility of supervised

16   release of up to three years.

17             Do you understand that?

18             THE DEFENDANT: Yes, I do.

19             THE COURT:  In addition to prison and supervised

20   release on the wire fraud charge, the court could sentence to

21   you pay a fine of up to 250 thousand dollars.

22             Do you understand that?

23             THE DEFENDANT: Yes, I do.

24             THE COURT:  In addition to everything else, the

25   court will order you to pay restitution on the wire fraud

1    charge and, again, I can't tell thank you amount of that

2    restitution.

3            Do you understand that?

4            THE DEFENDANT: Yes, I do.

5            THE COURT:  As with the other charges, on the wire

6    fraud charge, the court must sentence you to pay a special

7    assessment in the amount of $100.

8            Do you understand that?

9            THE DEFENDANT: Yes, I do.

10           THE COURT:  Again, as with the other fraud charges,

11   the securities fraud charges, on the wire fraud charge, you

12   may face additional civil penalties such as disgorgement and

13   injunctive relief, and also criminal forfeiture in this case

14   as described in the plea agreement.

15           Do you understand that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  And Mr. Klugman, there are obviously a

18   lot of moving pieces here.  Have I left out any of the

19   sentencing possibilities?

20           MR. KLUGMAN:  No, your Honor.

21           THE COURT:  Mr. Mass, do you agree?

22           MR. MAAS:  I agree, your Honor.

23           THE COURT:  All right.  Let's talk then, Mr. Stein,

24   about how the court will go about choosing a sentence because

25   there is obviously a lot of room from nothing to a maximum of

1   one hundred years that the court has to think about.

2           One of the things that the court has to take into

3   account is the so-called Federal Sentencing Guidelines.

4   You've already heard us talk about that a little bit today.

5   Have you discussed those with your attorney?

6           THE DEFENDANT: Yes, I have.

7           THE COURT:  Now, the guidelines help the judge

8   choose a sentence by coming up with two scores about the case.

9   One of those scores is a measure of the seriousness of the

10  conduct that is at issue.

11          So, for example, in a fraud case that involves

12  defrauding people of their money, the amount of loss, the

13  amount that you gained goes into the score, and we don't know

14  exactly what that is today, but that will affect the score.

15          Do you understand that?

16          THE DEFENDANT: Yes, I do.

17          THE COURT:  The other score is the measure of your

18  own criminal history, if you've ever been convicted of an

19  offense, that will affect the score.

20          Do you understand that?

21          THE DEFENDANT: Yes.

22          THE COURT:  Those two scores help the judge to find

23  a particular box on a grid, and I'm sure your attorney has

24  discussed this with you and shown you this grid, and written

25  down inside that box in the grid there is a range of months,

35

1  and that is the recommended guideline sentence for the case.

2          Do you understand that?

3          THE DEFENDANT: Yes, I do.

4          THE COURT:  Now, the court has to consider a

5  sentence within that range, but it can also impose a higher

6  sentence or a more lenient sentence, and in the end the court

7  has to impose a sentence that it finds just under all the

8  circumstances of the case.

9          Do you understand that?

10          THE DEFENDANT: Yes, I do.

11          THE COURT:  Now, as the attorneys discussed earlier,

12  there is a calculation of the guidelines that's written down

13  in the plea agreement and that is an estimate made by the

14  prosecutors.

15          That may or may not be correct and, frankly, there

16  is not a person here today who knows what the guidelines will

17  be in this case because Judge Weinstein will calculate the

18  guidelines later and, until he does it, no one can know what

19  the guideline calculation will be for this case.

20          Do you understand that?

21          THE DEFENDANT: Yes, I do.

22          THE COURT:  Now, to help the judge calculate the

23  guidelines and come up with a sentence, the Probation

24  Department is going to prepare a report about the case and

25  they'll interview you, and your attorneys can be there for the

1   interview; they'll talk to the government, I'm sure they will

2   talk to victims, they may talk to any number of people, and

3   they'll write up a report that has information about you, and

4   about the conduct in this case, and about the law that

5   applies, and about the sentencing guidelines, and it will have

6   a calculation of the sentencing guidelines.

7            And you'll get chance to review that report with

8   your attorney, and you may not like what you see, you may

9   think its unfair or it has mistakes about the law or about the

10  facts, but what you should understand is that none of that

11  will be a reason to take back your guilty plea.

12           Do you understand that?

13           THE DEFENDANT: Yes.

14           THE COURT:  What you can do, if you think there is a

15  problem with the report, is make an objection and your

16  attorneys will help you with that.

17           The judge will consider your objections to the

18  presentence report and he'll rule on them, and he'll hear from

19  you with respect to sentence, and he will hear from the

20  government about the sentence, and he will hear from the

21  victims about the appropriate sentence, and he will calculate

22  the guidelines and then he's going to impose a sentence.

23           If, at any step along the way, you may think the

24  judge made a mistakes or that he's being unfair, none of that

25  will be a reason to take back your guilty plea.

1              Do you understand that?

2              THE DEFENDANT: Yes, I do.

3              THE COURT:  Now, normally if you think the judge

4    makes a mistake in imposing a sentence, normally a defendant

5    would have the right to appeal the sentence to the Court of

6    Appeals.

7              One thing I do want to point out about your plea

8    agreement is, I see here on page four in paragraph four, it

9    says that as long as the term of imprisonment is 262 months or

10   below -- and I don't want to get the math wrong, but that's

11   about 22 years I think -- 262 months or below, as long as the

12   sentence is within that range you're not going to file an

13   appeal.

14             Now, the way I understand that, what that means is

15   that even if the judge makes a mistake in sentencing you, as

16   long as the total sentence is 262 months or less, you're going

17   to give up your right to appeal that sentence.

18             Is that your understanding as well?

19             THE DEFENDANT: Yes, it is.

20             THE COURT:  And is it your intention to give up that

21   part of your right to appeal?

22             THE DEFENDANT: Yes, it is.

23             THE COURT:  All right.  Is there anything that you'd

24   like to ask me about the charges in this case, about your

25   rights, about the sentencing possibilities or anything else

1    that relates to this matter?

2            THE DEFENDANT: No, I'm fine, your Honor.

3            THE COURT:  I'll willing to give you one more chance

4    to answer that question.  The reason I do that is people

5    sometimes change their mind about pleading guilty.

6            If you do, as you can see, we're taking down every

7    word that is being said here today.  If you ask to have your

8    guilty plea back later on, Mr. Klugman is going to come back

9    with the transcript of what you said here today and he'll say

10   Mr. Stein said he understood everything, don't give him his

11   guilty plea back.

12           So if there is anything that is going to affect your

13   decision about whether to plead guilty that you need to

14   discuss with me, now is the time to do it because later it may

15   be too late.

16           Do you understand that?

17           THE DEFENDANT: Yes, I do.

18           THE COURT:  All right.  Is there anything else you

19   want to ask me?

20           THE DEFENDANT: No, there's not.

21           THE COURT:  Do you need any further time discuss the

22   matter with your attorney?

23           THE DEFENDANT: I don't believe so, no.

24           THE COURT:  All right.

25           Mr. Mass, do you know of any legal reason why your

1    client should not plead guilty?

2            MR. MAAS:  I do not.

3            THE COURT:  And Mr. Stein, are you satisfied with

4    the legal representation you've received up until now?

5            THE DEFENDANT: Yes, I am.

6            THE COURT:  Tell me, please, how do you plead to

7    count one of the information charging securities fraud with

8    respect to investors in Genini Fund 1, guilty or not guilty?

9            THE DEFENDANT: Guilty, your Honor.

10           THE COURT:  How do you plead with respect to count

11   two of the information charging securities fraud with respect

12   to Prima Capital Management, guilty or not guilty?

13           THE DEFENDANT: Guilty, your Honor.

14           THE COURT:  How do you plead with respect to count

15   three of the information charging securities fraud with

16   respect to DISP, LLP, guilty or not guilty?

17           THE DEFENDANT: Guilty.

18           THE COURT:  How do you plead with respect to count

19   four of the information charging securities fraud with respect

20   to Counsel Financial Services LLC, guilty or not guilty?

21           THE DEFENDANT: Guilty, your Honor.

22           THE COURT:  How do you plead to count five of the

23   information charging wire fraud?

24           THE DEFENDANT:  Guilty.

25           THE COURT:  Are you making these pleas of guilty

1   voluntarily and of your own free will?

2           THE DEFENDANT: Yes, I am.

3           THE COURT:  Has anyone threatened or forced you to

4   plead guilty?

5           THE DEFENDANT: No.

6           THE COURT:  Other than what's written down in your

7   plea agreement with the government, has anyone made any

8   promise that has caused you to plead guilty?

9           THE DEFENDANT: No, your Honor.

10          THE COURT:  Has anyone made any promise about what

11  your sentence will be?

12          THE DEFENDANT: No, your Honor.

13          THE COURT:  Please tell me in your own words what

14  you did that you think makes you guilty of these crimes.

15          THE DEFENDANT:  Your Honor, I have been in the

16  financial services and insurance business since 1971 and I

17  started two investment funds call Genini and Prima in the

18  1980s.

19          Around 1998 I began using Genini and Prima funds

20  that had previously been invested with money managers to make

21  investments in a public company called Detour Media --

22          THE COURT:  Called?

23          THE DEFENDANT: Detour Media, in which I had a

24  personal stake.  The Genini and Prima investments in Detour

25  were generally loans to assist Detour with its cash flows.

1        I did not inform the Gemini or Prima investors about

2    the Detour investments because I expected that Detour would be

3    able to repay the loans.  Detour's financial problems

4    continued after 1998 and it filed for bankruptcy in 2002.  All

5    the Gemini and Prima funds were lost.

6        As Detour's financial situation continued to

7    deteriorate, I continued soliciting new investors for both

8    Gemini and Prima and used those funds primarily to pay

9    interest and principal to existing investors who made

10   withdrawals from their accounts.

11       I also continued to prepare regular financial

12   statements for Gemini and Prima investors that falsely showed

13   their investments to be safe and to be continuing to earn

14   interest in when fact the funds had been lost.  I continued to

15   do this up until 2008.

16       Beginning in 2002, I became involved in what is

17   generally referred to as the life settlement business.  I

18   believed at the time that the life settlement business

19   presented an opportunity for me to make money that I could use

20   to repay the Gemini and Prima investors whose funds had been

21   lost.

22       In early 2003, I began soliciting investments for an

23   entity named DISP LLC, which was a company that I set up to

24   raise five million dollars to buy life insurance policies and

25   to pay the premiums on the policies until they could be

1  resold.

2          After the money was raised, approximately $3 million

3  dollars was used to purchase life insurance policies.  I used

4  the remaining funds to pay interest and redemptions to Gemini

5  and Prima investors.

6          In order to prevent the DISP investors from learning

7  how I was handling their funds, I had financial and tax

8  documents prepared for DISP investors that falsely reported

9  that DISP's assets were on deposit when they were not.

10 Nevertheless, DISP bought and sold life insurance policies and

11 many of the DISP investors were repaid their entire

12 investments with a substantial return.

13         As part of my plan to earn money in the life

14 settlement business I formed a company named Vibrant

15 Capital --

16         THE COURT:  Sorry?

17         THE DEFENDANT: Vibrant Capital in 2003.

18         Vibrant earned money from servicing policies owned

19 by other investors and from buying or financing the purchase

20 of other life insurance policies.

21         I raised money for Vibrant by borrowing money from

22 individuals and institutions generally secured by Vibrant

23 assets or specific life insurance policies.  On more than one

24 occasion, I used the same policy as collateral for multiple

25 loans.

1         Beginning in 2007, I convinced most of the remaining

2    DISP investors to convert their DISP interests into Vibrant

3    notes.  I also transferred the remaining DISP policies to

4    Vibrant.  I estimated at the end of 2008 Vibrant had an

5    interest in life insurance policies with a total debt benefit

6    of more than 80 million dollars.

7         The 2008 I began soliciting people to make high

8    interest loans to an entity named Counsel Financial.  While I

9    did act as an intermediary for investors and arranged some

10   loans to Counsel on several occasions, I did not forward

11   investors money to Counsel but used the money to repay other

12   investors and prepared false documents to make it appear that

13   the loans had been paid.

14        In 2008, I also obtained money by taking advantage

15   of the relationship with an individual identified in the

16   information as Investor One.  The individual had inherited a

17   large sum of money and asked me to manage and invest some of

18   it.

19        While some of the funds entrusted to me were

20   invested properly, between 2008 and March of 2009, I used a

21   substantial amount of money entrusted to me by this person to

22   make payments to Gemini, Prima, Disk and Vibrant investors for

23   my own purposes.

24        I used very poor judgment.  I know what I did was

25   wrong.  My actions have caused great pain to my clients and

44

1  investors.  I want to express to the court how sorry and

2  ashamed I am for doing this and I am working very hard with

3  the receiver to make full restitution.

4        THE COURT:  All right.

5        Mr. Stein, I have a few follow-up questions to make

6  sure that there's a factual basis for your plea.  With respect

7  to Gemini and Prima and DIPS and also Counsel, you talked in

8  each case about preparing false statements; correct.

9        THE DEFENDANT:  Correct.

10        THE COURT:  Did you either personally or have

11  somebody else do it cause these statement to be made out to

12  investors?

13        THE DEFENDANT: Yes, I did.

14        THE COURT:  With respect to the investor you spoke

15  about last, did you cause any false statements -- I should

16  say, I heard you say that you misused the money that he

17  entrusted to you, he or she entrusted to you.

18        Did you say anything false to that person to get

19  that person to either give you money or to not take the money

20  back?

21        THE DEFENDANT: Yes, I did, your Honor.

22        THE COURT:  Did you make that communication by means

23  of some form of wire communication?

24        This is not the wire fraud?

25        MR. KLUGMAN:  It is wire fraud.  I mean, the victim

1    gets one wire in furtherance of the conspiracy.  The money was

2    wired from an account in Florida to an account in New York,

3    which is sufficient to meet that element.

4         THE COURT:  The money was wired as Mr. Klugman

5    described?

6         THE DEFENDANT: Yes, it was.

7         THE COURT:  Did that happen as a result of some

8    false communication that you made?

9         THE DEFENDANT: Yes, it was.

10         THE COURT:  Okay.  With respect to each of these

11    schemes that you engaged in, did you know what you were doing?

12         THE DEFENDANT: Yes, I did.

13         THE COURT:  It was your intention to essentially

14    fool people into parting with their money?

15         THE DEFENDANT: Yes, your Honor.

16         THE COURT:  All right.  Where were you when this

17    took place?

18         THE DEFENDANT: On Long Island, in my office.

19         THE COURT:  All right.

20         Mr. Klugman, is there anything further you think I

21    should elicit or that you would like to proffer with respect

22    to a factual basis for any of the crimes?

23         MR. KLUGMAN:  There is a factual basis based on the

24    allocution as to all five crimes.  Nothing from the government

25    unless the court has any further questions.

1          THE COURT:  Is there anything further you think I

2     should cover for purposes of Rule 11?

3          MR. KLUGMAN:  In terms of the allocution, no.

4          THE COURT:  Or in terms of the requirements of a

5     sufficient plea under Rule 11.

6          MR. KLUGMAN:  The plea is sufficient.  I suppose the

7     only thing that we could add for the record is there's one

8     provision in the -- one group of provisions in the agreement

9     that we should put on the record acknowledging that Mr. Stein

10    is aware of.

11         I will let Miss Kedeshian address that for the

12    court.

13         THE COURT:  Go ahead, please.

14         MS. KEDESHIAN:  Thank you, your Honor.

15         In lieu of the government pursuing criminal

16    forfeiture against Mr. Stein and his entities, pursuant to the

17    plea agreement, Mr. Stein has agreed to fully cooperate and

18    disclose all assets to the court appointed receiver in

19    connection with the Southern District of New York and SEC case

20    pending in the Southern District of New York, and that is a

21    condition of his plea agreement with respect to the government

22    in this case.

23         THE COURT:  All right.  That is set forth fully in

24    the plea agreement itself.

25         MS. KEDESHIAN:  It is, your Honor.  Thank you.

1          THE COURT:  Okay.  So with that said, is there

2    anything further that the government would like to cover

3    either for purposes of the allocution, for purposes of

4    satisfying Rule 11 or for any reason?

5          MR. KLUGMAN:  Nothing else from the government,

6    thank you.

7          THE COURT:  Mr. Maas, do you think I have complied

8    with everything in Rule 11?

9          MR. MAAS:  I know you have, your Honor.

10          THE COURT:  All right.

11          Based on the information I've received today, I find

12    the defendant is competent to proceed; I find that he is

13    acting voluntarily, that he fully understands his rights and

14    the potential consequences of his plea and that there's a

15    factual basis for his plea of guilty.

16          Further, with respect to the input that I have had

17    from victims of the offenses, I haven't heard anything today

18    that would interfere with me making a recommendation that the

19    court accept a guilty plea, obviously not with any prejudice

20    to what the court should or should not do with respect to

21    sentencing.

22          Therefore, based on everything I've heard today, I

23    respectfully recommend that the court accept Mr. Stein's pleas

24    of guilty to each of the five counts of the information and

25    I'll ask you all to appear before Judge Weinstein for a

48

1  hearing on whether to accept the plea and for sentencing on

2  September 28 at 10:00  in the morning.

3          Now, we have to address the issue of detention or

4  release.  I see that, as apparently it's already been

5  discussed before I came out today, that there's an agreement

6  with respect to conditions of release and that's reflected in

7  the bond form.

8          MR. KLUGMAN:  There is an agreement between the

9  parties.

10         MR. MAAS:  Prior to appearing today, Mr. Klugman and

11 I had discussions about the conditions of release -- Mr. Stein

12 has been cooperating with the government -- and we reached an

13 agreement that the initial bond that was set by Magistrate

14 Judge Azrack at the time of Mr. Stein's initial arrest, which

15 was a two million dollar bond secured by three pieces of real

16 estate, three homes, two owned by two of his children, a third

17 owned by one of his two sisters, would be modified to add his

18 third adult child and his other sisters as cosureties and to

19 add their homes as further security for the $2 million bond.

20         THE COURT:  All right.  I do have some questions

21 based on what some of the folks who spoke earlier today said.

22         You can have a seat, sir.  It's really for both

23 sides.  There were several references to multiple passports.

24         Let me turn to you, Mr. Klugman.  What can you tell

25 me about what the government understands the facts to be with

49

1    respect to passports.

2            MR. KLUGMAN:  Your Honor, we believe that Mr. Stein

3    only has one passport.  It has been reported to us before

4    that -- by one of the individuals -- that they believed he had

5    multiple passports, but based on what we can determine from

6    the evidence, we only believe he has one passport.  It was

7    surrendered at the time of his arrest on April first to

8    Pretrial Services who is now holding that passport.

9            THE COURT:  This is something the government has

10   investigated?

11           MR. KLUGMAN:  We have looked into it, yes.

12           THE COURT:  All right.

13           There were some concerns raised about will he have

14   money to abscond?  And that's a serious concern.  What can you

15   tell me about the government's information on that score,

16   about his ability to obtain access to funds?

17           MR. KLUGMAN:  Working together with the SEC, who has

18   brought a parallel civil proceeding in the Southern District

19   of New York, we've done our best to identify every asset that

20   Mr. Stein holds as we speak.  Any bank account we were able to

21   identify has been frozen.

22           He also owns, as mentioned, interest in life

23   settlement policies.  He provided an accounting to the court

24   setting forth a list of those policies.  That also has been

25   provided to the receiver.

1          He owns an apartment in Manhattan.  The SEC filed a

2    lis pendens against that apartment and I believe it's going to

3    be sold, put up for sale by the receiver sometime soon.

4          We are still continuing our investigation to

5    determine whether or not there have been any other assets that

6    we have missed.  We have not found any other assets of

7    substantial value that have not been seized or frozen at this

8    point in time but we're continuing to look.

9          THE COURT:  All right.  But based on what you know

10   now, do you have reason to believe that there are other assets

11   that you haven't found as opposed to just you want to be

12   careful and there is something you missed?

13         MR. KLUGMAN:  Based on what I know now, I don't

14   believe there's any assets in his name that we have missed so

15   far but obviously we're still looking.

16         THE COURT:  Regardless of whose name it's in.

17         MR. KLUGMAN:  I think there are family members who

18   have assets, but in terms of him personally or his businesses,

19   or him having access, no, we have not identified anything

20   else.

21         THE COURT:  The final question -- to address the

22   concerns that I have -- I don't know when this bond was

23   initially set by Magistrate Judge Azrack, but have there been

24   any reports that you are aware of any kind of violation of the

25   conditions of release thus far?

1    MR. KLUGMAN:  No, your Honor, there haven't been any

2    reports to me from the court's Pretrial Services department

3    about any violations of the bond set by Judge Azrack several

4    months ago, no.

5    THE COURT:  Mr. Stein, let me ask you -- you can

6    consult with your attorney before answering if you like -- but

7    I want to know a little bit more about the passports.  Have

8    you ever told anybody -- you remain under oath of course --

9    have you ever told anybody that you have multiple passports?

10    THE DEFENDANT: No, your Honor.

11    I think where the confusion might be is I took a

12    trim with one of the investors who is present today and my

13    passport was getting ready to expire, and I told them that I

14    had to get a new passport and maybe that's where it came up

15    that I had two passports.

16    One was an expired passport that I just simply

17    renewed in July, I think it was, before that trip.  I had no

18    other passport.

19    THE COURT:  And do you have access -- whether in

20    your name or any other name, do you have access to any other

21    passport?

22    THE DEFENDANT: No, your Honor.

23    THE COURT:  All right.  Now that I have asked these

24    additional questions, is there anybody else who wishes to be

25    heard purely on the issue of the bond to be set or the issue

1 of release? All right. I've asked and nobody has expressed

2 an interest in speaking further.

3       Because we are in a setting where the standard

4 remains under the Bail Reform Act that I should impose the

5 least restrictive conditions that will assure the appearance

6 of the defendant and the safety of the community, and we're

7 not in a setting where he has already been found guilty by a

8 court, I intend to endorse the agreement that the parties have

9 reached with respect to release.

10       So I will ask, do you have the other suretors here

11 in court?

12       MR. MAAS: No, your Honor. They live in North

13 Carolina and California respectively, and part of the

14 agreement is they will appear at the District Court in those

15 two districts to sign a bond before a Magistrate Judge there.

16       THE COURT: Do we have a date by which that will be

17 done?

18       MR. MAAS: We have agreed within a week from today

19 but we will have it done --

20       THE COURT: I will make that a condition of the

21 bond.

22       MR. MAAS: A week at the outside.

23       THE COURT: I want it reflected in the bond that the

24 additional suretors must sign the bond by June 29.

25       MR. KLUGMAN: Just so that's clear, I think it

53

1   probably is, but that the additional suretors are signing onto

2   the original bond which remains in existence, and those

3   individuals that have already pledged their properties as well

4   as making themselves personally liable and remain so.

5        THE COURT:  I will ask you to get the original

6   sureties to -- this can be done by counsel submitting a letter

7   that they have been advised what's happened today and they

8   agree to remain bound, because obviously with the guilty plea,

9   the incentives to flee change.

10       MR. MAAS:  Would you like that letter sent to your

11  Honor or Judge Weinstein?

12       THE COURT:  Either is fine.  Just so it's on the

13  docket of the case.  Give me a moment to put that on the form

14  here.

15       MR. KLUGMAN:  Your Honor, I should add one thing.

16       THE COURT:  Give me a moment,  please.

17       MR. KLUGMAN:  Sure.

18       THE COURT:  Go ahead, Mr. Klugman.

19       MR. KLUGMAN:  I should just add that Judge Weinstein

20  did make a few statements that are relevant to the bail

21  determinations, the travel issue, and I think there's an

22  agreement.

23       The original bonds said New York City and Long

24  Island.  I think the parties are agreement based on what Judge

25  Weinstein ruled that the limitations should be Southern

1  District of New York and Eastern District of New York.

2      One thing that's not referenced on the bond is that

3  Mr. Stein, through his counsel, requested permission to travel

4  certain areas outside of those listed on the bond and that

5  permission was granted.

6      And Judge Weinstein's view is that is as a result of

7  what he expected to happen here that he should not be able to

8  travel, even to visit relatives, outside of the Southern or

9  Eastern District of New York.

10     My understanding is that the defendant agrees to

11  that as well.

12     THE COURT:  All right.  To the extent that it's

13  Southern District and Eastern Districts as opposed to New York

14  City and Long Island, do you folks intend that to be a change

15  so that we are adding the counties north of the Bronx or can

16  we just leave it --

17     MR. MAAS:  We had at one point after Magistrate

18  Judge Azrack entered the original bond extended it to

19  Westchester by a letter.

20     I think we have agreed that it can be extended to

21  the northern counties of the Southern District just so we

22  don't -- it's unlikely we'll need it, but so we don't have to

23  come back and bother the court with that issue.

24     THE COURT:  And the government consents to that?

25     MR. KLUGMAN:  Yes, your Honor.

1        THE COURT:  All right.

2        What I have done is, I have just added in that the

3  bond incorporates the original bond except as noted, and I've

4  noted where we have sought changes or new conditions.

5        Mr. Stein, I'm going to order that you continue to

6  be free on bond, but I want to remind you of the conditions of

7  your release.

8        First of all, the amount of the bond is $2 million,

9  which means you have to abide by all of the conditions of your

10  release and you'll and at liberty until sentencing as long as

11  you abide by those conditions.

12        If you violate any of the conditions of your

13  release, you'll forfeit $2 million and you'll be remanded to

14  custody.

15        Do you understand that?

16        THE DEFENDANT: Yes.

17        THE COURT:  In addition, all of the people who have

18  signed the bond already, and the two -- I guess the four

19  people who will sign to put up their homes, all of these folks

20  have put up their homes and that's the first place the

21  government will go to get that two million dollars if you

22  violate the bond.  So you'll be creating a problem for all of

23  them.

24        Do you understand that?

25        THE DEFENDANT: Yes.

56

1          THE COURT:  It's important that you understand the

2     conditions of the release.  First of all, you must appear in

3     court every time the case is called.  I've already told you

4     that the next date is September 28.  You must appear then

5     unless the court gives you permission not to attend, but also

6     any other date the court sets.

7          Do you understand that?

8          THE DEFENDANT: Yes.

9          THE COURT:  You must not commit a crime while upon

10    release.  If you commit a crime while on release, not only

11    will you forfeit the bond and be subject to immediate remand,

12    but you could face additional charges for such other conduct

13    and you could face increased punishment for committing a crime

14    on release.

15         Do you understand that?

16         THE DEFENDANT: Yes, I do.

17         THE COURT:  Next I'm going to order that you remain

18    within the Southern and Eastern Districts of New York, that's

19    all of New York City, all of Long Island, and the counties

20    just north of the Bronx, you must not leave those areas for

21    any reason without permission from the court.

22         Do you understand that?

23         THE DEFENDANT: Yes, I do.

24         THE COURT:  You must not have a passport while

25    you're on release.  I understand you've already surrounded

57

1   your passport.  You must not apply for a passport.

2           Do you understand that?

3           THE DEFENDANT: Yes, I do.

4           THE COURT:  You're going to be under the

5   supervision, or continue to be under the supervision of our

6   Pretrial Services Agency.  They can visit you at your home or

7   any office that you may have at any time at random; they can

8   tell to you report to their office, and you must go when they

9   tell you.  If you fail to do that, that's a violation of the

10  bond.

11          Do you understand that?

12          THE DEFENDANT: Yes, I do.

13          THE COURT:  I'm making it a condition of the bond

14  that the people who have already signed when you were first

15  arrested expressed their consent to continue to be your

16  sureties now that you've pleaded guilty, and that they do so

17  by June 29, and that Mr  and Mrs.  Olive and Mr. and Mrs.

18  Jackofsky -- your children and in-laws?

19          THE DEFENDANT: Yes, it is.

20          THE COURT:  I will require that they sign the bond

21  to put up their homes no later than a week from today, June

22  29.

23          Do you understand all that?

24          THE DEFENDANT: Yes, I do.

25          THE COURT:  Do you have any questions about

1  conditions of your release?

2          THE DEFENDANT: No, your Honor.

3          THE COURT:  Are you willing to obey all of those

4  conditions?

5          THE DEFENDANT: Yes.

6          THE COURT:  Let me have you sign the revised bond,

7  please.   Sign where it says "defendant" on the new form.

8          MR. KLUGMAN:  It's already signed.

9          THE COURT:  Forgive me.

10         THE CLERK:  It's signed, Judge.

11         THE COURT:  All right.  Is there anything else,

12 folks?

13         MR. KLUGMAN:  Nothing from the government.

14         MR. MAAS:  Nothing.  Your Honor, thank you.

15         THE COURT:  Thank you all.

16         Folks, thank you all for your patience.  I'm going

17 to return to the government for safekeeping the original plea

18 agreement.

19         * * * * * * * * * * * * * * * * * * * *

20

21

22

23

24

25