```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                         :
                Plaintiff,                :
                                         :  09 CR 0377 (JBW)
    -against-                             :
                                         :  ECF Case
EDWARD T. STEIN,                          :
                                         :
                Defendant.                :
------------------------------------------------------------X
```

# DEFENDANT'S OBJECTIONS TO
# PRESENTENCE INVESTIGATION REPORT

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Brian E. Maas
Lia N. Brooks
John S. Schowengerdt
488 Madison Avenue, 9th Floor
New York, NY  10022
(212) 980-0120

*Attorneys for Defendant Edward T. Stein*

## PRELIMINARY STATEMENT

Edward T. Stein ("Stein"), by his attorneys Frankfurt Kurnit Klein & Selz, P.C., respectfully submits this memorandum of law objecting to two elements of the Sentencing Guidelines calculation presented in the December 29, 2009 Presentence Investigation Report ("PSR"). First, the PSR erroneously calculates loss as the total amount invested by the victims in this case without giving any credit for the amounts paid to these investors by Stein. As shown below, under an Application Note added by a 2001 amendment to Sentencing Guideline § 2B1.1, in calculating "loss" under the Guidelines, payments to investors are properly offset against their original investments. Although the Second Circuit has not yet interpreted the Application Note, the circuits that have addressed it and the Sentencing Commission itself at the time the Note was promulgated have stated that the holdings in the Second Circuit cases on which the Probation Department relied in refusing to offset these payments have been superseded. In this case, crediting the payments that Stein made to his investors will bring the loss below $50,000,000 and reduces the loss enhancement for the Guidelines calculation from 24 to 22.

Second, the PSR erroneously applies a 4 point enhancement that applies to defendants acting as investment advisers. While there is no dispute that Mr. Stein made misrepresentations to persons regarding certain investments, he was not acting as an investment adviser as defined in the Guidelines and, therefore, is not subject to this particular enhancement.

These two corrections will reduce Stein's Adjusted Offense Level from 38 to 32 and reduce his recommended Guidelines sentence from 235-293 months (19 to 24 years) to 121-151 months (10 to 12 years).[1]

---

[1] Stein believes that a sentence below even this lower Guidelines range fulfills the mandate for a sentence "sufficient, but not greater than necessary" as set forth in 18 U.S.C. § 3553(a). Stein will submit a separate memorandum in aid of sentencing to the Court addressing the applicability of 18 U.S.C. § 3553(a) to this case in advance of Stein's scheduled sentencing date, which is currently February 8, 2010.

# ARGUMENT

## I. The Probation Department's Guidelines Calculation

In the PSR, the Probation Department set forth the following Guidelines calculation for this case:

| Base Offense Level (§ 2B1.1(a)(1)) | 7 |
| --- | --- |
| Loss of more than $50,000,000 (§ 2B1.1(1)(M)) | +24 |
| Involved more than 50 victims (§ 2B1.1(b)(2)(B)) | +4 |
| Involved sophisticated means (§ 2B1.1(b)(9)(C)) | +2 |
| Defendant was an investment advisor (§ 2B1.1(b)(16)(A)(iii))[2] | +4 |
| Acceptance of responsibility (§ 3E1.1(a) and (b)(2)) | -3 |
| Adjusted Offense Level | 38 |

## II. The Amount of Loss in the PSR is Improperly Calculated

The PSR calculated the loss enhancement under § 2B1.1(1)(M) using the amount of the total investment by the all investors as a result of Stein's offense conduct, which is $68,403,502.05.[3] PSR ¶ 22. However, as the PSR itself calculates for restitution purposes,[4] the total amount invested by each victim was not the actual pecuniary loss of each victim because many investors made withdrawals from their investment accounts over the years, and some

---

[2] The citation to the Guidelines section for violation of the securities law while the defendant was an investment adviser in the PSR is to the 2008 version of the Guidelines. Under § 1B1.11 (2009) "The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." Under the 2009 Federal Sentencing Guidelines Manual, which will be in effect at the time of Mr. Stein's sentencing on February 8, 2010, the enhancement for an investment adviser is found at § 2B1.1 (b)(17)(A)(iii). The substance of the enhancement is identical in the 2008 and 2009 versions, only the designation is different.

[3] The PSR includes a table that sets out, on an investor-by-investor basis, the amounts invested by each investor, the amount paid back to each investor and the net loss for each investor. These figures were determined after an extensive joint effort by the Government and defense counsel to reach an accord on each number. Thus, this objection does not address the number themselves, but only the definition of loss as total investment without any credit for amounts returned as recommended by the Probation Department.

[4] The Probation Department recommends that the Restitution amount for Stein is the "net loss." There is no disagreement on this point.

victims received regular interest payments from Stein on their investments instead of re-investing the interest. Therefore, the actual pecuniary loss of each victim is the total amount invested minus any amounts withdrawn. This amount was determined by the Probation Department to be $45,396,373.08. PSR ¶ 22.

Prior to 2001, there was a split in the circuits as to whether payments to investors in an investment fraud scheme should be offset against the aggregate investment. Some courts, such as the Eleventh Circuit in *United States v. Orton*, 73 F.3d 331, 334 (11th Cir. 1996), followed the "loss to losing victims" approach and held that the offset was proper as the net amount reflected the defendant's intended loss. Other courts, including the Second Circuit, applied the "risk theory of loss" to hold that for the purpose of sentencing, the amount of loss in fraud cases should be the total amount of property taken even where all or part of it has been returned to the victim. *See U.S. v. Koh*, 199 F.3d 632 (2d Cir. 1999); *U.S. v. Carrozzella*, 105 F.3d 796 (2d Cir. 1997); *U.S. v. Mucciante*, 21 F.3d 1228 (2d Cir. 1994). These cases held that the loss should be comprised of the total amount of money put at risk by the scheme because it was presumed that any payments made to victims prior to detection was for the purpose of furthering the scheme, rather than repaying them for their loss. *Carrozzella*, 105 F.3d at 805. It is our understanding that the Probation Department relied on these cases in reaching its conclusion on loss. As will be shown below, the "loss to losing victims" approach is the correct method for calculating the loss enhancement under the Guidelines.

This split in the circuits was addressed by the Sentencing Commission in 2001 when it added Application Note 3(F)(iv) to Section 2.B1.1 of the Guidelines as part of Amendment 617. The comments to Amendment 617 expressly state that the purpose of the new Application Note was to resolve the circuit conflict regarding the proper method for loss calculation. The Commission expressly adopted the "loss to losing victims" approach of the Eleventh Circuit in

*Orton*, in which loss was calculated by totaling the net losses of the victims who lost all or part of the money they invested. U.S.S.G. Supp. to App. C Vol II, amend. 617 at pp. 184-85 (effective Nov. 1, 2001); *see Orton*, 73 F.3d at 334. In doing so, the Commission rejected the "risk theory of loss" approach in cases like *Mucciante* and *Carrozzella* (and erroneously relied upon in the PSR). See *Id.*

> Application Note 3(F)(iv) addressed the issue of loss from a Ponzi scheme as follows:
>
> In a case involving a fraudulent investment scheme, such as a Ponzi scheme, loss shall not be reduced by the money or the value of the property transferred to any individual investor in the scheme in excess of that investor's principal investment (i.e., the gain to an individual investor in the scheme shall not be used to offset the loss to another individual investor in the scheme).

U.S.S.G. § 2B1.1, cmt. n. 3(F)(iv) (2009). Thus, the language added by Amendment 617 states that the only situation where repayments cannot be used as an offset is when an investor's return exceeds their original investment. This new language is consistent with a pre-existing Application Note, §2B1.1 3(E)(i), related to loss calculation, which states that the total loss amount should be reduced by "[t]he money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." U.S.S.G. § 2B1.1, cmt n. 3(E)(i) (2009). Reading 3(F)(iv) and 3(E)(i) together, it is only the gains to an investor that cannot be offset; all other repayments are to be credited against the total loss attributed to the defendant.

Although the Second Circuit has not yet analyzed Application Note 3(F)(iv), the Ninth Circuit recently reversed a district's court use of the "risk theory of loss" in its calculation of loss for sentencing in a fraud case. *U.S. v. Van Alstyne*, 584 F.3d 803, 817 (9th Cir. 2009) (holding that based on Amendment 617, the amount of loss in a fraud scheme should be reduced by the amount of funds returned to investors up to the amount invested). The *Van Alstyne* court noted that Amendment 617 clarified the appropriate method for calculating losses in Ponzi schemes

4

and stated that cases that did not allow for offsets for payments to losing investors were no longer good law. *Id.* In *United States v. Setser*, the Fifth Circuit also ruled that its prior cases adopting the "risk theory of loss" had been superseded by Application Note 3(F)(iv), and that the defendant should have been given credit for money that was returned to investors up to the amount they had invested. 568 F.3d 482 (5th Cir. 2009).

Under Application Note 3(F)(iv), as it has been interpreted consistently by those courts addressing it, the total loss attributed to Stein's conduct should be $45,396.373, which is the total amount of money invested minus any payments to investors up to the amount they invested. In a case involving a loss of more than $20 million but less than $50 million, a 22-level enhancement is warranted rather than the 24-level enhancement used in the PSR. U.S.S.G. § 2B1.1(b)(1)(L).

### III. **The Investment Adviser Enhancement Is Inapplicable**

The Adjusted Offense Level in the PSR has been incorrectly calculated by erroneously adding a four-level enhancement per § 2B1.1(b)(16)(A)(iii) (2009) for an offense involving violation of a securities law while the defendant was an investment adviser. This enhancement is unwarranted because Mr. Stein has never acted as an investment adviser with respect to the victims of his conduct.

The four-level enhancement for investment advisers was added to the Guidelines in 2003 as a continuation of the Sentencing Commission's efforts to implement the Economic Crime Package of 2001. *See* Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary (May 1, 2003) at p. 5. The creation of the enhancement to cover registered broker-dealers, investment advisers, and people associated with them stemmed from Congress' directive to provide greater punishment for corporate officers and directors who commit fraud in the wake of the corporate scandals of the early 2000's. *See id.* at p. 9 ("[A] four level enhancement [for registered broker dealers and investment advisers] appropriately reflects the

5

culpability of offenders who occupy such positions and who are subject to heightened fiduciary duties imposed by securities law or commodities law similar to duties imposed on officers and directors of publicly traded corporations.").

The application note to § 2B1.1(b)(16)(A)(iii) (2009) states that the term "investment adviser" has the meaning given to it in the Investment Advisers Act of 1940 (the "IAA"), which states that an investment adviser is "any person who, for compensation, engages in the business of advising others…as to the value of securities or as to the advisability of investing in, purchasing or selling securities." U.S.S.G. § 2B1.1 cmt. n. 14(A) (2009); 18 U.S.C. § 80b-2 (a)(11); *see also U.S. v. Regensberg*, 635 F. Supp. 2d 306, 311-12 (S.D.N.Y. 2009) (relying on the definition of an investment adviser in rejecting application of the enhancement to a defendant who was not compensated for his services as an investment adviser).

In keeping with the Sentencing Commission's stated purpose when amending the Guidelines in 2003, courts have limited the use of the investment advisor enhancement to situations where the defendant has been a registered and/or practicing broker-dealer or paid investment adviser or has held himself out as such. *See U.S. v. Gilman*, 478 F.3d 440, 444 (1st Cir. 2007) (defendant subject to investment adviser enhancement where he had practiced as an independent securities broker and registered investment adviser for more than 20 years); *U.S. v. Longo*, 184 Fed. Appx. 910, 915, 2006 WL 1674267, at *4 (11th Cir. 2006) (enhancement appropriate where defendant, who was a compliance officer, falsely held herself out as retirement plan trustee and was associated with an investment adviser by virtue of her employment by a registered investment adviser); *U.S. v. Yates*, 2009 WL 1789116, at *1 (W.D.Va. 2009) (enhancement applied to defendant who operated fraudulent scheme while employed as an investment adviser at two different brokerage firms). Since the addition of the investment adviser enhancement, there have been no reported cases in the Second Circuit (or

elsewhere) where the enhancement has been applied to a defendant who was not either working as an investment adviser or holding himself out to clients as one.

Stein's conduct does not meet the definition of an investment adviser used in the Guidelines. Stein has never been registered as an investment adviser or held himself out to be a registered investment adviser. Moreover, he was not compensated by investor/victims for any investment advice he gave. While he misapplied and misappropriated funds, this conduct is the essence of the crime itself and does not satisfy the definition of compensation necessary to qualify for the enhancement. *See* 18 U.S.C. § 80b-2 (a)(11); *see also U.S. v. Regensberg*, 635 F. Supp. 2d 306, 311-12 (S.D.N.Y. 2009) (finding investment adviser enhancement unwarranted where defendant received percentage of investor's profits and advised on the relative merits of different investment options but where "there is no indication that he was compensated for such [investment] advice."). To qualify as an investment adviser under the IAA, an individual must be compensated specifically for his services as an adviser, rather than simply receiving a transaction fee or percentage of profits for executing the investment on behalf of the client. *See Thomas v. Met. Life Ins. Co.*, 2009 WL 2778663, at \*\*7-9 (W.D. Okla. 2009) (holding that broker-dealer was not covered by the IAA where he was not compensated separately for his investment advice and thus qualified for the exception for broker-dealers under the definition of investment adviser in the act). In *Thomas*, the court compared the compensation received by an investment adviser in the form of a separate "advice fee" to the performance-based commissions and fund management fees earned by broker-dealers and found that the latter did not constitute the kind of compensation required for broker-dealers to be subject to the IAA because any advice given was incidental to the brokerage or dealer service. *See id.*; *see also Bogart v. Shearson Lehman Bros., Inc.*, 1993 WL 33643, at \*\*2-4 (S.D.N.Y. 1993) (dismissing claim where plaintiff was unable to show that the defendant qualified as an investment adviser under the IAA because

7

defendant only received commissions on plaintiff's options trading account, even though he advised plaintiff on the merits of various trades, because "there is no allegation of payment of a separate investment adviser's fee."). The court in *Thomas* noted that if it were not for this distinction, all broker-dealers would be subject to the IAA, which they are expressly not. *See id.* at *8.

Stein was never compensated for offering investment advice nor did he have discretion over people's funds or accounts. Although he sometimes made recommendations to clients concerning money managers, Mr. Stein was not separately paid by his clients for this advice. In addition, although Stein solicited investments for Gemini, Prima, DISP, and Counsel, his compensation was based on the performance of these investments and did not represent compensation by his clients for the advice itself.

## CONCLUSION

For the reasons set forth above, Defendant Edward T. Stein respectfully requests that the Court issue an order lowering his Adjusted Offense Level from 38 to 32.

Dated: New York, New York
       January 22, 2009

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: _____
    Brian E. Maas
    Lia N. Brooks
    John S. Schowengerdt

488 Madison Avenue, 10th Floor
New York, New York 10022
(212) 980-0120

*Attorneys for Defendants Edward T. Stein*
