UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- against -

EDWARD T. STEIN,

Defendant.

09-CR-377

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

JACK B. WEINSTEIN, Senior United States District Judge:

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the sentencing guidelines referred to in section 3553(a)(4), the court shall indicate the specific reasons for imposing a sentence different from the guidelines. 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in the written order of judgment and commitment." *Id.* Even though the mandatory nature of the guidelines has been excised and they are now "advisory," *see United States v. Booker*, 543 U.S. 220, 245-46 (2005), the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006). Such a statement should demonstrate that the court "considered the parties' arguments and that it has a reasoned basis for exercising its own legal decisionmaking authority." *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)) (internal quotations and alterations omitted).

1

On June 23, 2009, Edward T. Stein pled guilty to all counts of a five-count Information. Count One charged that between January 1998 and April 2009 the defendant committed securities fraud in relation to Gemini Fund I, L.P., in violation of 15 U.S.C. §§78j(b) and 78ff. Count Two charged that between January 1998 and April 2009 the defendant committed securities fraud in relation to Prima Capital Management Corp., in violation of 15 U.S.C. §§78j(b) and 78ff. Count Three charged that between January 2002 and April 2009 the defendant committed securities fraud in relation to DISP, LLC, in violation of 15 U.S.C. §§78j(b) and 78ff. Count Four charged that between January 2006 and April 2009 the defendant committed securities fraud in relation to Counsel Financial Services, LLC, in violation of 15 U.S.C. §§78j(b) and 78ff. Count Five charged that between January 2008 and April 2009 the defendant defrauded "Investor 1," and caused a wire transfer in the amount of $1 million to be transmitted from Investor 1's bank account on May 6, 2008, in violation of 18 U.S.C. § 1343.

Stein was sentenced on February 9, 2010. The proceeding was videotaped in order to develop an accurate record of the courtroom atmosphere and the factors and considerations that a district court must evaluate in imposing a sentence under 18 U.S.C. § 3553(a). *See In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (utility on appeal).

The court finds the total offense level to be 36 and defendant's criminal history category to be category I, yielding a guidelines range of imprisonment of between 188 and 235 months. The total offense level includes a four-point enhancement based on defendant's status as an investment adviser. *See* U.S.S.G § 2B1.1(b)(17)(A)(iii). The offense carried a maximum term of imprisonment of 20 years on each of Counts One through Four, *see* 15 U.S.C. § 78ff, and 30 years on Count Five, *see* 18 U.S.C. § 1343. The guidelines range of fine was from $20,000 to $200,000. An order of restitution was mandatory. *See* 18 U.S.C. § 3663A; U.S.S.G. § 5E1.1.

Stein was sentenced to nine years' incarceration and five years' supervised release. A $500 special assessment was imposed. Restitution was ordered in the amount of $46,396,373.08 owed to defendant's victims, due and payable forthwith. A fine of $20,000 was imposed. The fine is not to impair defendant's ability to pay restitution. *See* 18 U.S.C. § 3572(b).

The court-appointed receiver shall remit any amounts recovered to the Clerk of this court to be applied to restitution. The Clerk shall distribute funds to the victims identified in the corrected Presentence Investigation Report, to each victim in proportion to her or his share of the overall restitution amount, until restitution is completed.

Defendant's children are adults; they and his ex-wife are financially independent. There is no need for the defendant to provide for them or other dependents. All assets and claims presently held by defendant, and any revenue derived therefrom, shall be applied to the restitution and fine. Garnishment of defendant's wages after his release is not to exceed 50% to allow defendant to support himself; if defendant comes into possession of substantial funds or assets in the period after his release, the government may apply to the court to remove this limitation.

During the period of supervised release, defendant is to provide to the Probation Department: (1) full financial disclosures; and (2) full descriptions of any employment undertaken.

Respectful consideration was given to the sentencing guidelines, the Sentencing Commission's policy statements and all other factors listed under 18 U.S.C. § 3553(a) to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The court imposed a non-guideline sentence under 18 U.S.C. § 3553(a) and *Booker*.

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." *See* 18 U.S.C. § 3553(a)(1). The defendant's offenses were serious. This was not aberrant behavior. The fraudulent scheme extended over eleven years, during which defendant manipulated and stole from clients who trusted him. The present case is not comparable other to frauds common in the securities industry, in which the injuries are suffered by well-advised investors, capable of protecting their own interests, whose relationships with those who commit the frauds are relatively impersonal. Stein looked into the eyes of people whose friendship he solicited. Knowing the disastrous effect his conduct was likely to have, he forged instruments, lied to investors, stole funds, and stripped his clients of their assets—in some cases of all of their savings and all of their dreams. The testimony of the victims was given great weight by the court.

The defendant has strong ties to his loyal, affectionate, and supportive family members, including two younger sisters, his ex-wife, three adult children, two grandchildren, nieces, in-laws, and others. Many have praised defendant's caring and generous nature. Defendant played a central role in the upbringing of his children and, especially after his brother-in-law passed away, his two nieces. Defendant maintains close and affectionate relations with his children and grandchildren. His ex-wife maintains a good relationship with the defendant. She and their children have provided financial support since his arrest, including properties to secure defendant's appearance bond.

Many friends, business associates, and other acquaintances have expressed support for defendant, and have attested to his generosity and good character. Those who have made supportive submissions to the court include a number of his victims and former investors. Several of these have directly stated that they forgive defendant's malfeasance and the harm he caused them. A number of acquaintances voiced appreciation for financial advice they received

4

from defendant during the period of his fraudulent schemes. Many members of defendant's community remain supportive and continue to view him as a close friend.

All available evidence indicates that defendant led an exemplary life prior to the beginning in 1998 of the fraudulent schemes that resulted in his guilty plea. Defendant has been professionally successful and productive throughout his life, and he continued to engage in legitimate business activities, alone and with partners, during the period of his fraudulent schemes.

Upon his arrest, defendant timely accepted responsibility for his crimes. He cooperated with the United States Attorney's Office and the court-appointed receiver. Defendant's assistance enabled determination of accurate restitution amounts for a number of his victims.

Since his arrest, defendant has continued to cultivate and pursue the legitimate business opportunities available to him. He is engaged in business projects which, he represents, may one day enable him to make substantial contributions to the receivership. He appears to take seriously his obligation to make restitution to his many victims. He has expressed remorse for his misconduct. His family and friends have provided strong and uninterrupted support throughout this period.

A sentence of nine years reflects the seriousness of the offense and will promote respect for the law and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence. The chief issue in the present case is general deterrence. Persons who commit white-collar crimes like defendant's are capable of calculating the costs and benefits of their illegal activities relative to the severity of the punishments that may be imposed. A serious sentence is required to discourage such crimes. General deterrence is satisfied with a nine-year

sentence. The sentence will send a clear message that any involvement in securities and wire fraud will result in a substantial prison sentence.

Specific deterrence is achieved through incapacitation and the impact of this conviction on the defendant's employability. It is unlikely that he will engage in further criminal activity in light of the notoriety the collapse of his fraud has earned him, his expressions of remorse, and the support provided by an extensive network of family and friends.

Jack B. Weinstein
Senior United States District Judge

Dated: February 17, 2010
       Brooklyn, New York